## MERCED MINING COMPANY vs. LOCKWOOD.

*Thirteenth Judicial District Court, August,* 1857.

INJUNCTION—ACTION TO QUIET TITLE.

Where a party, applying for an injunction to restrain the committing of waste by another, and in his bill avers an adverse title in the trespasser, the injunction cannot be granted.

Motion to grant an injunction, and bill to quiet title. The case is stated in the opinion.

The names of counsel have not been furnished.

BURKE, J.—This is an action to quiet title, and prevent trespass, for which an injunction is asked, and brought against R. Lockwood, J. D. Hudgin, J. C. Fremont, et al. The plaintiff alleges in the complaint that it is an incorporated Company, organized for the purpose of quartz mining, and sets forth the charter, &c., and avers that soon after its organization " it became, and still is, the owner and possessor " of certain described real estate and veins of gold-bearing quartz, and sets forth the names and localities thereof. That plaintiff took possession in May, 1851, when the said land, etc., " was unclaimed by J. C. Fremont, or any other person," and have, from that time on, been working the same, and have expended in permanent improvements thereon upwards of $800,000. And that John Charles Fremont, in May, 1851, publicly and repeatedly disclaimed having any title thereto, whereby the plaintiff was induced to make valuable improvements on said land.

And that defendants claim an estate and interest in said land and quartz veins adverse to plaintiff's title. That Fremont and Lockwood claim by deed from Alvarado to J. C. Fremont, which defendant falsely claims vested a legal title in fee simple to all the said property mentioned, " because the said Fremont has obtained a patent from the United States of America, signed by Franklin Pierce, the President thereof," which patent is recorded in the General Land Office, at Washington, dated Feb. 19, 1855, pursuant to a decree of the Supreme Court of the United States, dated Dec., 1854, confirming unto the said Fremont, as assignee of the said Alvarado, ten square leagues of land.

And which patent, as defendants claim, was issued in pursuance of the Act of Congress, " to ascertain and settle private land claims in California," passed·March 3d, 1851, upon the presentation to the Commissioners of the General Land Office, of a transcript of the plat and certificate of the survey of the said tract, duly certified by the Surveyor General of the United States, for the State of California, dated July 31, 1855 ; which patent embraces all the property which the plaintiff took lawful and peaceable possession of, as before stated, in May, 1851.

That the Alvarado grant was a " float " for grazing and agricultural land, to be located within boundaries described in the grant, embracing over one hundred square leagues. That Alvarado made no settlement on the grant. That he sold to Fremont for the paltry sum of three thousand dollars. That Fremont did not attempt to survey the unde fined ten square leagues until 1849, which survey then made did not approach within two miles of any of the property owned by plaintiff, nor within nine miles of the valuable mines now owned by plaintiff.

This map and survey, so made by Fremont, was published and presented with the claim to the Land Commissioners. And the said Fremont disclaimed any right or title to any other land under his Alvarado grant, than the ten leagues so surveyed by him, until July, 1855, when another survey was made by the Surveyor General, embracing the property so owned and possessed by this plaintiff. That the last survey was made while an appeal was pending concerning the grant, and that therefore the survey, and the grant issued thereon, are both void. That this last survey was fraudulent and void, it having been made clandestinely, and upon mineral lands.

The complaint further shows that the defendants are now actually trespassing on some portions of said veins, and that they avow their intention to continue so to trespass upon the same ; and that they are doing great and irreparable injury to said mines ; and that plaintiff is informed and believes that defendants are unable to respond in any amount of damages.

And alleges further, that none of the defendants have any color of title, but are naked trespassers ; and that all the defendants, except Lockwood and Fremont, are merely holding possession of the veins for

the purpose of paying themselves, out of the proceeds thereof, money due them from Lockwood.

The plaintiff prays for an injunction *pendente lite*, and that on the final hearing, the same may be made perpetual; and that a decree be entered against the defendants that they have no interest or estate in, or to, the premises in question. The injunction is asked for upon the facts set forth in the complaint.

Formerly no court of equity would grant an injunction in a cause where it was shown, either by the complaint itself, or by the verified answer, that the defendant claimed an adverse title. Lord Eldon remembered the time when, if a plaintiff stated that a defendant claimed by an adverse title, he stated himself out of court. But since that time injunctions have grown in favor, and the rule is greatly relaxed.

In the case of the Merced Mining Co. vs. John C. Fremont, 6 Cal. Rep., April Term, 1857, the Court said, "There is a distinction between the effect of an allegation in the complaint, that the acts were committed under pretense of an adverse title, and the sworn statement (of the fact) in the answer. A man may pretend to claim what he would not solemnly set up in his answer." The court then adds, "The allegation in the complaint that the defendants justified under an adverse claim, will not in any sense prejudice the right to the injunction."

It would be to misapprehend the court, it seems to me, to infer from the language above quoted, that it intended to decide that in no case can a plaintiff, by showing the adverse claim of the defendant, prejudice his right to an injunction. If a plaintiff in possession, with only the presumptive title which his possession creates, alleges in his complaint that the defendant claims adversely, by reason of a valid patent from the sovereign authority, obtained in good faith, would not such an admission prejudice his right to the injunction? It surely would. If the plaintiff in an action shows by his complaint a better title in the defendant than he claims for himself, he can have no injunction. In this cause the plaintiff's title is merely possessory, and the complaint admits the United States patent to J. C. Fremont, but alleges that the patent is fraudulent and void.

This raises an important question: Is it competent for the plaintiff to question the validity of the patent?

This question was raised in the Supreme Court of the United States in the case of Field vs. Seabury, December Term, 1856, in deciding which the court said, " This case involves directly the point whether, where a grant or patent for land, or legislative confirmation of title to land, has been given by the sovereignty or legislative authority, only having the right to make it, without any provision having been made in the patent, or by the law, to inquire into its fairness as between the grantor and grantee, or between third parties, a third party can raise in ejectment the question of fraud, as between the grantor and grantee, and thus look beyond the patent or grant? We are not aware that such a proceeding is permitted in any of the courts of law.

In England a bill in equity lies to set aside letters patent obtained from the King by fraud, and it would in the United States, but it is a question exclusively between the sovereignty making the grant and the grantee."

This clear and deliberate opinion by the highest tribunal in the land upon this very point, must be conclusive. Then if the plaintiff is not permitted to question the validity of the patent, has he not in this complaint shown such an adverse title in the defendants as will preclude him from the aid of an injunction?

The right of the United States to make a grant of land containing gold and silver mines, is questioned. The Supreme Court of this State decided, in the case of Hicks vs. Bell, 3 Cal. Rep., 219, that by virtue of her sovereignty, this State is the sole owner of all the mines of gold and silver within her bounds. I question this doctrine, and very much doubt the competency of a State court to finally determine and settle a question of right between the United States and the State. Nor does it appear that the State itself has much faith in her title to the mines. The presumption that she has, is rebutted by the fact that they have never been disposed of, and the proceeds squandered, as was the case with all her other patrimony. The better opinion seems to be that the ownership thereof is in the United States. Hence it appears, that to entitle the plaintiff to the injunction he must show a sufficient title in himself, and that the defendants are without right or title committing waste, or trespass, to the irreparable injury of plaintiff's property.

That in this complaint the plaintiff shows that defendant's claim, un-

der a patent from the United States, the validity of which the plaintiff is not permitted to question, and which must, therefore, be considered good and perfect. And as the grant of land by the United States carries with it the mines of gold and silver, the conclusion seems irresistible that this is not a proper case for the interposition of that powerful provisional remedy, the order of injunction. It is therefore refused.